UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DANIEL L. AYOTTE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 2662 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| THE BOEING COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Daniel L. Ayotte ("Plaintiff") filed this action in the Circuit Court of Cook County, Illinois, alleging claims against a host of defendants, including The Boeing Company ("Boeing"), arising from his exposure to asbestos. (R. 1-1, Compl.) Boeing removed the action to this Court. (R. 1, Notice of Removal.) Before the Court is Plaintiff's motion to remand the case to state court. (R. 240, Mot. to Remand.) For the reasons set forth below, the motion is denied.

## BACKGROUND

In September 2016, Plaintiff was diagnosed with mesothelioma, and in September 2017, he filed suit against Boeing and other defendants asserting that his illness was caused by exposure to asbestos. (R. 1-1, Compl.) He alleged that he was "exposed to and inhaled, ingested or otherwise absorbed asbestos fibers emanating from certain products he was working with and around that were manufactured, sold, distributed, marketed or installed by the Defendants[.]" (*Id.* at 4.) He claimed that his exposure occurred sometime between 1970 and 2004 while he was serving in the U.S. Air Force, working as a commercial airline mechanic, and/or engaging in home remodeling and other activities. (*Id.* at 4-14.) As to Boeing, he alleged that he was exposed to asbestos in Boeing's products "during the course of his employment, non-occupational work

projects (including, but not limited to, home and automotive repairs, maintenance, and remodeling) and/or in other ways[.]" (*Id.* at 4.)

Boeing was served with the complaint on September 21, 2017, and filed its answer on October 30, 2017. (R. 240-5, Docket at 71; R. 240-3, Answer.) In addition to denying the bulk of the allegations in the complaint, Boeing asserted 23 separate affirmative defenses, including that Boeing "is immune from liability as a government contractor who manufactured the products to which Plaintiff claims to have been exposed pursuant to reasonably precise specifications of the United States government." (R. 240-3, Answer at 10.) In the ensuing months, Plaintiff amended his complaint several times, although the substance of the allegations against Boeing remained the same.[1] (*See* R. 240-5, Docket at 14, 60, 122, 136; R. 240-6, Fourth Am. Compl.; R. 240-7, Fifth Am. Compl.)

In October 2017, Plaintiff executed an authorization for release of his military records. (R. 1-2, Disc. Resp. at 8-19.) In November 2017, Plaintiff filed a disclosure of expected trial witnesses. (R. 240-4, Disclosure.) As to Boeing, he disclosed that he and several other witnesses intended to testify about his work at three different military bases during the 1970s, as well as his work as a commercial mechanic at three different airports between 1979-2004, during which time he claimed to have been exposed to asbestos in Boeing's products. (*Id.*)

On March 13, 2018, Boeing gained electronic access to Plaintiff's military records. (R. 1-4, Military Records.) Those records showed that while serving in the U.S. Air Force, Plaintiff worked on various Boeing airplanes, including B-52s and KC-135s, which, according to Boeing, were specifically manufactured by Boeing for the U.S. military. (*Id.* at 9; R. 1-7,

---

[1] Plaintiff amended the complaint five times in state court, but in his motion to remand, he acknowledges that he failed to properly notice the fifth amended complaint. (R. 240, Mot. to Remand at 4.) He asserts, and Boeing does not dispute, that the fourth amended complaint is the operative pleading. (*Id.*; R. 296, Resp. at 3.)

Leatherman Decl. ¶¶ 11-30.) On March 20, 2018, Plaintiff sat for the first day of his discovery deposition, and it was revealed that Plaintiff had worked on DC-3 aircraft during his time as a commercial airline mechanic. (R. 1-5, Pl.'s Dep. Tr. at 12.) According to Boeing, a significant number of DC-3 aircraft were Boeing C-47 and C-54 planes that were originally manufactured for the U.S. military, sold as military surplus after World War II, and converted for commercial use. (R. 1-7, Leatherman Decl. ¶¶ 31-33.)

On April 12, 2018, Boeing removed the case to this Court on the basis of federal officer jurisdiction. (R. 1, Notice of Removal.) Boeing asserts that removal is proper because it is "being sued for asbestos-related injuries arising from or relating to equipment that it manufactured and supplied to the United States government under the government's detailed direction and control[.]" (*Id.* at 5.) On May 11, 2018, Plaintiff moved to remand the case to state court. (R. 240, Mot. to Remand.) In Plaintiff's view, Boeing's notice of removal was untimely because it was not filed within 30 days of the date Boeing was served with the original complaint. (*Id.* at 4-5.) Boeing opposes the motion to remand, arguing that its notice of removal was timely because it was filed within 30 days of the date Boeing obtained information providing the basis for its assertion of federal officer jurisdiction. (R. 296, Resp. at 5-12.)

## LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States." 28 U.S.C. § 1441(a). A notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1). When it is not apparent from the complaint that the case is

removable, a notice of removal may be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one in which is or has become removable." 28 U.S.C. § 1446(b)(3). The party removing the action "bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). A removing party meets this burden by submitting evidence demonstrating a "reasonable probability" that jurisdiction exists. *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004) (citation omitted).

A case must be remanded to state court if subject-matter jurisdiction is lacking or if the defendant failed to comply with the removal statute. *See generally GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625-26 (7th Cir. 2013). "In considering a motion for remand, the court must examine the plaintiff's complaint at the time of the defendant's removal and assume the truth of all factual allegations contained within the original complaint." *Elftmann v. Vill. of Tinley Park*, 191 F. Supp. 3d 874, 878 (N.D. Ill. 2016) (citation omitted). The Court can also consider "summary judgment-type evidence such as affidavits and deposition testimony," provided that the Court does not use this evidence "to 'pre-try' the case[.]" *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1092 (N.D. Ill. 2015) (citation omitted).

## ANALYSIS

Congress has granted a right of removal to federal officers who face civil or criminal lawsuits in state court based on their official acts. 28 U.S.C. § 1442(a)(1). The removal statute provides in pertinent part:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: . . . The United States or any agency thereof or any officer

4

> (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]

28 U.S.C. § 1442(a)(1). This provision "evinces concern that 'unfriendly' states will impose state-law liability on federal officers and their agents for actions done under the immediate direction of the national government." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (citation and internal quotation marks omitted). The purpose of the statute is to provide federal officers with the right to have such lawsuits "litigated in the federal courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

Although federal officers and agencies are the intended beneficiaries of Section 1442(a)(1), a non-governmental party can also invoke the removal provision under certain circumstances. *Ruppel*, 701 F.3d at 1180. To remove a case based on federal officer jurisdiction, a private defendant must establish four elements: (1) he is a "person" within the meaning of the statute; (2) he was "acting under" the federal government or one of its officers; (3) there is a causal nexus between the federal authority and the conduct challenged in the plaintiff's lawsuit; and (4) he has a colorable federal defense to the plaintiff's claim. *Id.* at 1180-81. In effect, federal officer jurisdiction exists when a private party is "working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government" and is sued in relation to that conduct. *Id.* at 1181. The federal officer removal provision is not to be given "narrow" or "limited" interpretation, regardless of whether it is invoked by a private party or a government official. *Id.* at 1180. Rather, the statute should be "liberally construed" to effectuate its purpose. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). If the requirements of federal officer jurisdiction are met, "then the entire case is removable." *Ruppel*, 701 F.3d at 1182. Unlike other types of removal, the federal officer removal provision does not require the

5

consent of the other defendants. 28 U.S.C. § 1442(a)(1); *see also Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 842 (S.D. Ill. 2006) (collecting cases and observing that "removal under 28 U.S.C. § 1442 can be effected by any defendant in an action, with or without the consent of co-defendants").

In his motion to remand, Plaintiff does not challenge Boeing's right to remove this case to federal court based on federal officer jurisdiction.[2] (R. 240, Mot. to Remand.) Rather, Plaintiff argues that Boeing's notice of removal was untimely because it was filed seven months after Boeing was served with the original complaint. (*Id.* at 5-7.) Boeing disagrees that its notice of removal was untimely, arguing that it did not have a basis to remove until several months after it was served. (R. 296, Resp. at 5-12.) Specifically, Boeing argues that the basis for federal officer removal was not revealed until March 13, 2018, when Boeing obtained Plaintiff's military records showing that several of the aircraft he worked on were manufactured by Boeing for the

---

[2] Because it pertains to the Court's subject-matter jurisdiction, the Court has independently considered whether the requirements of federal officer jurisdiction are met in this case. *See Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("[T]he parties cannot confer subject-matter jurisdiction by agreement, and federal courts are obligated to inquire into the existence of jurisdiction *sua sponte*[.]" (internal citation omitted)). Corporate entities like Boeing qualify as "persons" for purposes of federal officer jurisdiction, *Ruppel*, 701 F.3d at 1181, and Boeing has submitted evidence that it was acting under the direction of the U.S. government when it manufactured certain planes that allegedly caused Plaintiff's injury. (R. 1-7, Leatherman Decl. ¶¶ 20-33.) Boeing is asserting a government contractor defense, a recognized federal defense that "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design" of a product alleged to have injured the plaintiff. *Ruppel*, 701 F.3d at 1183; *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) (recognizing the "uniquely federal interest" in protecting private companies performing work under contract with the U.S. government). The defense applies when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. Although the Court does not prejudge the merits, Boeing's assertion of the government contractor defense is at least plausible given the evidence Boeing has submitted about the planes that allegedly caused Plaintiff's injuries. *Ruppel*, 701 F.3d at 1182; *see also Totten v. Crane Co.*, No. 13 C 8157, 2014 WL 1689689, at *1-4 (N.D. Ill. Apr. 28, 2014) (defendant's assertion of government contractor defense was plausible where plaintiff alleged that he had contracted mesothelioma from defendant's products, and defendant submitted evidence that those products had been manufactured for the U.S. Navy). The Court therefore finds a "reasonable probability" that jurisdiction exists. *Schimmer*, 384 F.3d at 404.

U.S. military. (*Id.* at 5-6.) Plaintiff counters that Boeing could have readily discerned a basis for removal earlier, either from his original complaint or from his pretrial disclosures filed in November 2017, because it was clear from those documents that Plaintiff was claiming exposure to asbestos during his time in the U.S. military. (R. 240, Mot. to Remand at 5; R. 304, Reply at 2-3.)

The Court agrees with Boeing. The 30-day removal clock is triggered only when the defendant receives a pleading or other paper that "affirmatively and unambiguously reveals that the predicates for removal are present."[3] *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) (quoting *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013)). The question is not "what the defendant subjectively knew or should have discovered through independent investigation." *Walker*, 727 F.3d at 825. Rather, "the timeliness inquiry is limited to examining contents of the clock-triggering pleading or other litigation paper; the question is whether that document, on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable." *Id.* "This bright-line rule promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants." *Id.*

Plaintiff's original complaint, and his superseding amended complaints, were far too vague to provide "unambiguous" notice to Boeing that it had a right to remove based on federal officer jurisdiction. In his original complaint, Plaintiff alleged generally that he was exposed to asbestos both as a civilian and during his service in the Air Force, but he did not name Boeing as

---

[3] "The phrase 'other paper' in Section 1446(b)(3) includes deposition transcripts, interrogatory answers, and any other official papers filed or exchanged in connection with the action." *Gross v. FCA US LLC*, No. 17 C 4889, 2017 WL 6065234, at *2 n.3 (N.D. Ill. Dec. 7, 2017). Plaintiff's official military records certainly appear to meet this definition, and Plaintiff does not argue otherwise. Plaintiff also does not dispute Boeing's assertion that it gained access to Plaintiff's military records on March 13, 2018.

7

a defendant in the count pertaining to his military service. (R. 1-1, Compl.) As to the count pertaining to his civilian exposure, he named Boeing and upwards of 50 other defendants and alleged generally that his exposure occurred "[d]uring the course of his employment, non-occupational work projects (including, but not limited to, home and automotive repairs, maintenance and remodeling) and/or in other ways." (*Id.* at 4.) In a chart attached to the complaint, Plaintiff provided slightly more detail, delineating that Boeing was being named as a defendant in connection with his work for Delta Air Lines between 1979 and 2004 at three different airports: O'Hare Airport (Chicago, Illinois), West Palm Beach Airport (West Palm Beach, Florida), and Hartsfield-Jackson Airport (Atlanta, Georgia). (R. 1-1, Ex. A to Compl. at 17-20.) As to Boeing's products at issue, he identified them only as "[a]sbestos containing brakes, gaskets, heat shields, fire hoses, valves, and other asbestos containing products." (*Id.* at 20.) Although Plaintiff amended his complaint several times, the substance of the allegations against Boeing remained the same. (*See* R. 240-6, Fourth Am. Compl.; R. 240-7, Fifth Am. Compl.)

The pretrial disclosures Plaintiff points to were no more definitive. Plaintiff disclosed only generally that he had witnesses who would testify about his exposure to Boeing's products sometime over the course of four decades at any one of three airports or three military bases. (R. 240-4, Disclosure.) Regarding the specific products at issue, he again identified them only as "[a]sbestos containing brakes, gaskets, heat shields, fire hoses, valves, and other asbestos containing products[.]" (*Id.* at 37.) Nothing about these filings provided specific notice to Boeing that Plaintiff's alleged injuries were caused by products manufactured by Boeing for the U.S. military.

8

Plaintiff seems to believe that Boeing should have pieced together from his filings that the products at issue were military planes, but that is not the standard. "[W]hat a defendant might have discovered by following up on clues or suggestions that federal jurisdiction may exist is irrelevant to the timeliness inquiry." *Gross v. FCA US LLC*, No. 17 C 4889, 2017 WL 6065234, at *3 (N.D. Ill. Dec. 7, 2017). Courts in other asbestos cases have concluded that the 30-day deadline for asserting federal officer jurisdiction does not begin to run until the defendant is put on notice of the specific products that allegedly caused the plaintiff's exposure to asbestos. *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) ("Until Durham revealed which aircraft he had worked on during his Air Force career, Lockheed couldn't assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense."); *Bond v. Am. Biltrite Co.*, No. CV 13-1340-SLR-CJB, 2014 WL 657402, at *4 (D. Del. Feb. 20, 2014) ("[A] defendant has no firm basis for removal [based on federal officer jurisdiction] until the military products relating to the defendant that are alleged to be associated with asbestos exposure are specifically identified." (citation, internal quotation marks, and alterations omitted)); *In re Asbestos Prod. Liab. Litig.*, No. CIV.A. 11-CV-63520, 2011 WL 2039218, at *3 (E.D. Pa. May 25, 2011) ("[S]pecific military product identification is the linchpin of federal officer removal in the asbestos context.").

The Court finds these cases persuasive. As the court observed in *Durham*, defendants like Boeing manufacture a variety of products, some of which involve government contracts and some of which do not. *Durham*, 445 F.3d at 1251. Until Boeing had information about the exact products that allegedly caused Plaintiff's injury, it could not know whether those products had been manufactured for the U.S. government and thus whether the predicates for federal officer jurisdiction were present. *Id.*

Plaintiff relies on *Mims v. 84 Lumber Co.*, No. CV 13-298-SLR-CJB, 2013 WL 4775306 (D. Del. Sept. 6, 2013), for the opposite conclusion. (R. 304, Reply at 2.) In that case, however, the court found that the defendant failed to adequately explain "what it was about the content of Mr. Mims' deposition that made its federal defense now ascertainable for the first time." *Mims*, 2013 WL 4775306 *Id.* at *7. Here, by contrast, Boeing has clearly explained that it did not know until the specific planes at issue were identified that these products had been manufactured for the U.S. government, rather than for purely commercial purposes. (R. 296, Resp. at 7-8; R. 1-7, Leatherman Decl.) The court in *Mims* specifically noted that the defendant did not advance such an argument in its filings. *Mims*, 2013 WL 4775306, at *5. Plaintiff also cites *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 334 (D. Conn. 2008), where the court determined that the defendant failed to demonstrate "that it could not have reasonably ascertained the case's removability" much earlier in the case. *Id.* at 334. However, in *Pantalone* the plaintiff clearly alleged in his complaint that he was exposed to asbestos in pumps made by defendant while he was working at a Navy shipyard. *Id.* Here, by contrast, Plaintiff failed to name Boeing (whether inadvertently or otherwise) in the count arising from his military service. (*See* R. 1-1, Compl. at 9-14.) His pretrial disclosure was also vague, as he revealed only generally that he had witnesses who would testify about his exposure to Boeing's products at some point over the course of four decades at any one of six different locations, some of which were military bases and some of which were not. (R. 240-4, Disclosure.) He also identified Boeing's products very generally, referring only to parts rather than to any particular aircraft. (*Id.* at 37.) Based on these distinctions, the Court is unpersuaded by Plaintiff's reliance on these cases.

It is true, as Plaintiff points out, that Boeing asserted an affirmative defense based on government contractor immunity months before removing the case. (*See* R. 240, Mot. to Remand

at 6; R. 240-3, Answer at 10.) The Court does not find this dispositive, however, because the standards governing assertion of an affirmative defense and the decision to remove a case to federal court are quite different. As the court in another asbestos case observed, an "affirmative defense need not be plausible to survive, and must merely provide fair notice of the issue involved." *Bond*, 2014 WL 657402, at *4 (citation, internal quotation marks, and alterations omitted). Thus, a defendant could assert a government contractor defense "based only on the possibility that a federal contract would be at issue." *Id.* (citation and internal quotation marks omitted). By contrast, "a defendant seeking to remove under Section 1442(a) must be able to muster more evidence than that—it must instead have identified concrete factual information that, viewed in the light most favorable to it, entitles it to a complete defense." *Id.* (citation and internal quotation marks omitted). Boeing did not have that "concrete factual information" until it learned which specific aircraft had allegedly caused Plaintiff's injury. *See id.* Had Boeing acted precipitously and filed a notice of removal based on incomplete information, "it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal." *Durham*, 445 F.3d at 1251.

Based on the above, the Court concludes that the 30-day deadline for removal did not begin to run until Boeing learned on March 13, 2018, that Plaintiff's exposure to asbestos occurred, at least in part, in connection with his work on planes manufactured by Boeing for the U.S. government. Boeing's notice of removal filed on April 12, 2018, was therefore timely. The motion to remand is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (R. 240) is DENIED. The parties are ordered to appear for a status hearing on July 3, 2018, at 9:45 a.m. They are directed to reconsider their settlement positions in light of this opinion and to exhaust all avenues for settling this action prior to the status hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 22, 2018**